## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KATHY M. HAIR,**

    **Plaintiff,**

vs.                                                                                    **Case No. 8:05-CV-1571-T-EAJ**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g) et seq., to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**A.   Standard of Review**

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g)(2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence

---

[1] The parties have consented to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Dkt. 9).

to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**B.    Factual Background**

Plaintiff filed an application for Disability Insurance Benefits (DIB) on August 14, 2002, claiming an onset of disability beginning January 19, 2001.[2] (T 53-55) Plaintiff's application was denied initially, upon reconsideration, and by the Administrative Law Judge ("ALJ") in a decision issued on February 11, 2005. (T 12-24) The Appeals Council declined to review the ALJ's decision (T 4-6), making the ALJ's decision the final decision of the Commissioner.

The ALJ found that Plaintiff was not eligible for DIB benefits because she retained the residual functional capacity to perform a limited range of sedentary work and could make a successful adjustment to work that exists in significant numbers in the national economy. (T 20-22) The ALJ determined that Plaintiff was not disabled at any time through February 11, 2005. (T 24) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff alleges that the ALJ failed to consider the combined effect of Plaintiff's impairments and erred by

---

[2] Plaintiff filed a previous application for DIB on July 27, 2001, which was denied at the initial level on August 16, 2001. (T 12)

rejecting the opinions of Plaintiff's treating physicians without adequate cause. (Dkt. 17). Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff was 46 years old at the time of the administrative hearing on October 26, 2004. (T 267) Plaintiff graduated from high school (T 267) and has past relevant work experience as a receptionist and printer. (T 268-69) Plaintiff states that she has been unable to work since January 19, 2001, due to a depression, anxiety attacks, low back pain, leg pain, degenerative disc disease, osteoarthritis, and asthma. (T 68)

Following the administrative hearing on October 26, 2004, the ALJ found that Plaintiff suffered from anxiety, a depressive disorder, degenerative disc disease of the lumbar spine, asthma, and a history of polysubstance abuse. (T 14) The ALJ determined that the above impairments are severe, "but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Id. The ALJ held that Plaintiff retained the residual functional capacity to perform a limited range of sedentary work,[3] and that, while she could not perform her past relevant work, she could perform the jobs of proof reader, ticket checker, and circulation clerk. (T 22) In reaching his conclusion that Plaintiff was not under a "disability," the ALJ found that Plaintiff's testimony was not fully credible. (T 20)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

---

[3] Sedentary work, defined at 20 C.F.R. §§ 404.1567(a), 416.967(a), involves the lifting of not more than ten pounds at a time and occasionally lifting or carrying objects such as docket files, ledgers, and small tools. Although a sedentary job involves sitting, walking and standing may be required occasionally.

**C.     Discussion**

Plaintiff argues that the ALJ erred by: (1) failing to consider the combined effects of Plaintiff's impairments; and (2) improperly rejecting the opinions of Plaintiff's treating physicians. (Dkt. 17 at 6, 11). Defendant maintains that the ALJ properly considered the combined effects of Plaintiff's impairments and that substantial evidence supports the ALJ's decision to reject the opinions of Plaintiff's treating physicians. (Dkt. 18 at 4, 11). The undersigned will first consider Plaintiff's argument that the ALJ improperly discounted the opinions of Plaintiff's treating physicians.

**1.  Plaintiff's Treating Physicians**

Plaintiff contends that the ALJ improperly discounted the opinions of Plaintiff's treating physician Alan Iezzi, M.D. ("Dr. Iezzi") and treating psychiatrist Bruce Edson, M.D. ("Dr. Edson"). (Dkt. 17 at 12).

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.[4] Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the ALJ may reject the opinion of a treating physician if it is conclusory, contrary to the evidence, or unsubstantiated by any objective medical evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983); accord Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987).

Dr. Iezzi

The ALJ reviewed the treatment records and opinion of Dr. Iezzi and noted Dr. Iezzi's

---

[4] A treating physician's opinion will be accorded controlling weight if it is supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §404.1527(d)(2).

treatment of Plaintiff on the following dates: on July 29, 2002 for a wart removal; on September 17, 2002 for an upper respiratory infection, urinary tract infection, asthma, anxiety and depression; on February 11, 2003 for a cough, bilateral ear pain, a sore throat, and a shooting pain in her left leg; on April 11, 2003 for back pain; on July 18, 2003 for back and shoulder pain; and on August 15, 2003 and October 28, 2003 for medication refills. (T 18) The ALJ discussed the results of the October 31, 2003 MRI ordered by Dr. Iezzi that indicated Plaintiff had grade 1 lumbar spondylolithesis, facet arthropathy at the L4-5 levels, disc dehydration with disc bulging at the L2-3 through the L5-S1 levels, and central vertebral body hemangioma within the L5 vertebral. Id. The ALJ also stated that Dr. Iezzi's treatment notes reflected Plaintiff's continued complaints of back, leg, and hip pain. Id.

The ALJ described in detail Dr. Iezzi's October 18, 2004 opinion that Plaintiff was able to stand/walk less than two hours during an eight hour workday and to sit for less than two hours during an eight hour workday, that Plaintiff would need to take unscheduled breaks of 20 to 40 minutes every one and a half to two hours, and that Plaintiff needed to lie down several times during the day (T 18); the ALJ found Dr. Iezzi's opinion inconsistent with the medical evidence as a whole and with other medical reports in the record and accorded it little weight. (T 21) The ALJ stated that Dr. Iezzi's records reflect primarily Plaintiff's routine medical problems and medication refills. Id. The ALJ stated that Dr. Iezzi's only treatment of Plaintiff beyond routine medication refills was ordering an MRI that subsequently failed to reveal any condition requiring surgery. Id. The ALJ pointed out that Dr. Iezzi's records contained no findings of intractable pain, sensory, reflexive or motor deficits or significant persistent limitation in gait, station, or range of motion. Id. Based on these observations, the ALJ gave Dr. Iezzi's opinion of Plaintiff's limitations little weight. Id.

In accordance with her duty to weigh the evidence, the ALJ considered Dr. Iezzi's opinion as one of Plaintiff's treating physicians. The ALJ then pointed to several aspects of Dr. Iezzi's opinion which demonstrated good cause for rejecting that opinion. For instance, the ALJ highlighted the fact that, with the exception of one MRI, Dr. Iezzi did not treat Plaintiff for the impairments she claims render her disabled; rather Dr. Iezzi treated Plaintiff's other routine medical problems and provided her with medication refills. The ALJ indicated that Dr. Iezzi's opinion was not supported by findings of intractable pain, sensory, reflexive or motor deficits or significant persistent limitation in gait, station, or range of motion. (T 21) Without such findings as a foundation, Dr. Iezzi's conclusions regarding Plaintiff's impairments are somewhat conclusory. In any case, substantial evidence supports the ALJ's decision to discount Dr. Iezzi's opinion; Plaintiff has failed to show that the ALJ's consideration of Dr. Iezzi's opinion was error.

Dr. Edson

The ALJ discussed the results of a psychiatric evaluation of Plaintiff conducted by Dr. Edson on May 2, 2001 in which Dr. Edson opined that Plaintiff's affect was appropriate to content, her mood was anxious, thought processes were logical, cognition was grossly intact, and insight and judgment were adequate. (T 15) The ALJ then recounted Dr. Edson's diagnosis that Plaintiff had a panic disorder, a social disorder, a history of major depression, and a Global Assessment of Functioning ("GAF") score of 60.

The ALJ also outlined Dr. Edson's continued treatment of Plaintiff from May 2, 2001 through January 29, 2003. (T 16-17) The ALJ discussed Dr. Edson's opinion dated July 9, 2003 that Plaintiff had a depressed mood, insomnia, racing thoughts, restlessness, hopelessness, no motivation, and that her medications may cause her to experience lethargy and decreased cognition.

6

(T 17) The ALJ reviewed Dr. Edson's opinion that Plaintiff would be absent from work more than three times per month due to her impairments or treatment, that she had marked limitations in the areas of activities of daily living and social functioning, that she had constant deficiencies of concentration, persistence, or pace, and that she had experienced repeated episodes of decompensation. Id.

In light of Dr. Edson's comments, the ALJ next discussed the opinion of Glenn G. Perry, M.D. ("Dr. Perry") following a consultative psychological evaluation on February 12, 2003. (T 17) The ALJ considered Dr. Perry's opinion that Plaintiff was well oriented in all spheres, that her recent and remote memory was within the normal range, that no significant cognitive disturbance was shown, that her motor behavior appeared normal and her gait was unremarkable, that her speech was logical and coherent, her computations within the normal range, and that she showed no impairment of judgment in everyday situations or social situations. Id. The ALJ noted Dr. Perry's diagnosis that Plaintiff had a general anxiety disorder, a bipolar II disorder under partial medical remission, and polysubstance abuse in sustained remission. Id.

The ALJ accorded little weight to Dr. Edson's July 9, 2003 opinion upon finding that it was not consistent with Dr. Edson's own clinical evaluations or with the findings of other physicians in the record. (T 18) The ALJ stated that Dr. Edson's assertion that Plaintiff had marked limitations in daily living and social functioning, with constant deficiencies in concentration, persistence, or pace, is inconsistent with his finding that Plaintiff had a GAF score of 60, which indicates that Plaintiff had only moderate symptoms. (T 18-19) The ALJ discussed Dr. Edson's finding that Plaintiff did well when taking Paxil, that on June 1, 2001 Plaintiff reported she was sleeping well and having no panic attacks, and that on August 24, 2002, Dr. Edson described Plaintiff as doing

generally well with no panic attacks. (T 19) The ALJ noted that Dr. Edson's finding that Plaintiff had suffered repeated episodes of decompensation was not supported by documentation in the record of a single episode of decompensation that met the requirements of listing sections 12.04 and 12.06. Id. The ALJ therefore gave little weight to Dr. Edson's July 9, 2003 opinion. Id.

In finding that Dr. Edson's July 9, 2003 opinion was inconsistent with his other findings and that his opinion regarding Plaintiff's episodes of decompensation was not supported by evidence in the record, the ALJ properly exercised his fact-finding role in weighing the evidence and resolving any inconsistencies in the evidence. Plaintiff has not demonstrated any error in the ALJ's consideration of this medical source opinion.

### 2. Combined Effect of Impairments

Plaintiff submits that the Commissioner did not consider the combined effect of her impairments, both severe and non-severe, as required by Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987), and other cases. Specifically, Plaintiff argues that the ALJ did not adequately consider Plaintiff's headaches in combination with her other impairments, nor their effect on her ability to work.[5]

Plaintiff was prescribed the migraine headache medication Imitrex on July 29, 2002 while being treated by Dr. Iezzi. (T 254) In addition, on January 23, 2003 Plaintiff reported weekly headaches to consultative physician Leoncio A. Perez, M.D. ("Dr. Perez"). (T 171) The ALJ asked

---

[5] In conjunction with this argument, Plaintiff elucidates the ALJ's duty to develop a full and fair record, but does not present any argument that the ALJ has not fulfilled this duty in Plaintiff's case. (Dkt. 17 at 8-9). As noted below, the ALJ questioned Plaintiff about how her headaches affected her daily life. (T 275, 282)

Plaintiff about her headaches at the administrative hearing. (T 275, 282)[6] At that time, Plaintiff described her headaches as occurring about twice a month and lasting three to four hours each. (T 275) Plaintiff stated that she takes Imitrex for her headaches and that it controls the pain. (T 282, 275) Defendant asserts that the ALJ properly considered Plaintiff's complaints of headaches in the disability analysis.

The ALJ must consider the combined effects of a claimant's impairments in determining if she is disabled. Walker, 826 F.2d at 1001 (citation omitted). In this case, the ALJ elicited testimony from Plaintiff about her headaches and how they affected her daily life. (T 275, 282) In her decision, the ALJ recounted Plaintiff's testimony that "she experiences headaches about two times a month and that they last about three to four hours each." (T 14) Plaintiff's headaches are mentioned in Plaintiff's medical records only the two times discussed above. The ALJ's consideration of Plaintiff's headaches based on this sparse evidence reflects her careful evaluation of all Plaintiff's impairments. Further, the ALJ's decision addresses Plaintiff's impairments "in combination." (T 14); see Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (ALJ's statement that claimant did not have a "combination of impairments" that constituted a severe impairment is evidence that the ALJ considered the combined effect of a claimant's impairments). Plaintiff has not shown that the ALJ did not adequately consider Plaintiff's headaches or their effect on her ability to work in combination with her other impairments.

Plaintiff also submits that the ALJ should have found Plaintiff's headaches to be a severe impairment. (Dkt. 17 at 8). The Social Security regulations provide a general description of

---

[6] Plaintiff's allegations concerning headaches do not appear to have been included in Plaintiff's application for disability benefits, although Plaintiff states in her application that she is taking migraine medication. (T 64)

"severe" impairments:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. . . .

20 C.F.R. § 416.920(c). The Eleventh Circuit has held that "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The ALJ must consider Plaintiff's medical condition as a whole in making this determination. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted).

Based on the record, the ALJ met her duty to consider Plaintiff's impairments at the second step of the disability determination. No evidence in the record indicates that Plaintiff's headaches significantly limited her ability to perform basic work activities so as to constitute a "severe" impairment pursuant to 20 C.F.R. § 404.1520. The ALJ found that Plaintiff had medically determinable impairments that were considered "severe" under the regulations and continued to step three of the analysis. Because the ALJ found Plaintiff had other "severe" impairments at step two, classifying Plaintiff's headaches as a "severe" impairment would not have altered the ALJ's analysis at this point.[7] Moreover, substantial evidence based on an adequately developed record supports the ALJ's decision that Plaintiff's headaches did not affect her ability to work. Plaintiff's argument as

---

[7] As discussed above, the ALJ considered Plaintiff's headaches when continuing with subsequent steps in the disability determination by reviewing Plaintiff's comments at the administrative hearing regarding her headaches and the references to Plaintiff's headaches contained in the medical evidence. (T 14, 16)

to this issue is without merit.

Accordingly and upon consideration, it is **ORDERED** that:

(1) the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, each party to bear its own costs and expenses; and

(2) the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

**DONE AND ORDERED** in Tampa, Florida on this 11th day of August, 2006.

_____
ELIZABETH A JENKINS
United States Magistrate Judge